FILED
2020 Mar-16 PM 01:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| CATHY NAYLOR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY ADMINISTRATION, ) <br> ) <br> Defendant. ) | Case Number: 5:18-cv-01372-JHE |

## MEMORANDUM OPINION

Plaintiff Cathy Naylor ("Naylor") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). (Doc. 1). Naylor timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On July 15, 2015, Naylor protectively filed a Title II application for a period of disability and DIB. (Tr. 146-48, 149-50). That same day, Naylor also protectively filed a Title XVI application for SSI. (Tr. 146-48, 151-56). In both applications, Naylor alleged disability beginning April 24, 2015. (Tr. 146-48, 149-56). These claims were initially denied on October 14, 2015. (Tr. 42-43). Thereafter, Naylor filed a written request for a hearing on November 16, 2015. (Tr. 84-90). On June 15, 2017, an Administrative Law Judge ("ALJ") held a video hearing.

(Tr. 29-41). After the hearing, the ALJ denied Naylor's claims on November 7, 2017. (Tr. 24). Naylor sought review by the Appeals Council, but it declined her request on June 29, 2018. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On August 27, 2018, Naylor initiated this action. (*See* doc. 1).

Born in 1954, Naylor was sixty-one-years-old on the alleged onset date. (Tr. 190). Naylor has a tenth-grade education and is able to communicate in English. (Tr. 194, 196). Naylor has past relevant work as a waiter (tr. 24), and alleges disability based on a bulging disc and arthritis. (Tr. 195).

## II. Standard of Review[1]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

---

[1] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Naylor meets the insured status requirements of the Social Security Act though March 31, 2020, and that Naylor had not engaged in substantial gainful activity from her alleged onset date of April 24, 2015. (Tr. 19-20). At Step Two, the ALJ found Naylor has the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease, and medial meniscus tear of the right knee. (Tr. 20). At Step Three, the ALJ found Naylor did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

Before proceeding to Step Four, the ALJ determined Naylor's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Naylor had the RFC to perform light work as defined

4

in 20 C.F.R. 404.1567(b) and 416.967(b), except Naylor could lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for a total of six hours in an eight-hour workday with normal breaks; she can sit for a total of six hours in an eight-hour workday with normal breaks; she is unlimited in her ability to push/pull; she can never crawl or climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; she must avoid concentrated exposure to vibration; and she must avoid all exposure to hazardous machinery and unprotected heights. (Tr. 21).

At Step Four, the ALJ determined Naylor was able to perform her past relevant work as a waitress because it does not require the performance of work-related activities precluded by Naylor's RFC.[3] (Tr. 23-24). Therefore, the ALJ determined Naylor has not been under a disability and denied Naylor's claim. (Tr. 24).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Naylor contends the ALJ's finding that Naylor was capable of performing a reduced range of light work is not supported by substantial evidence. (Doc. 13 at 7). Specifically, Naylor alleges the ALJ erred in evaluating the credibility of her complaints consistent with the Eleventh Circuit

---

[3] With this finding, the ALJ did not proceed to Step Five. (Tr. 24).

5

pain standard when the ALJ failed to properly consider Naylor's longitudinal treatment history and mischaracterized and improperly disregarded evidence. (*Id.* at 7-8).

### A. Evaluation of Subjective Complaints and Application of the Eleventh Circuit Pain Standard

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id*. However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. See 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996

6

WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

After considering the evidence, the ALJ cited the appropriate standard and found Naylor's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but then determined Naylor's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22). The ALJ referenced medical records from Naylor's primary care physician Dr. Charles Coffey, which document Naylor's reports of back and right knee pain, as well as medical records from orthopedic surgeon Dr. Ray Fambrough, which document Naylor's reports of right knee pain. (*Id.*). The ALJ cited an April 28, 2015 MRI of Naylor's right knee that showed evidence of degenerative joint disease, a torn medial meniscus, and a small Baker's cyst, as well as a May 19, 2015 MRI of her right knee that showed degenerative arthritis and a torn medial meniscus. (*Id.*). The ALJ also noted Naylor received a steroid injection in her right knee on May 19, 2015, but reported continued right knee pain the next month. (*Id.*). At that point, on June 9, 2015, as the ALJ noted, Dr. Fambrough recommended exercises and arthroscopic surgery. (*Id.*). The ALJ notes that Naylor did not undergo the recommended surgery, but continues to use prescription medication for her knee pain. (*Id.*). Later in the decision, the ALJ acknowledges that Naylor asserts she did not receive "necessary medical treatment due to lack of medical insurance,"

7

but concludes "the record is absent of frequent emergency room visits or attempts to secure medical care from other state agency, charitable or sliding scale sources." (Tr. 23).

   1. **Longitudinal Treatment History**

Naylor challenges the conclusion that there is substantial evidence to show her severe impairments of lumbar degenerative disc disease and degenerative joint disease of the right knee are "generally controlled with conservative measures, primarily with the use of prescription medications." (Doc. 13 at 7-8) (citing tr. 23).

Records indicate that as early as 2014, prior to the alleged onset date, Naylor reported lower back pain with radiation down both legs, which was worsening. (Tr. 270). She reported that Tramadol, a prescription narcotic used to treat moderate to severe pain, was not helping anymore. (*Id.*). Physical examination revealed antalgic gait (gait that develops as a way to avoid pain while walking), lumbar tenderness, and spasm. (Tr. 271). Although Naylor noted improvement with medication in June 2014 (tr. 274), by August 2014, she reported she was having difficulty walking due to joint pains and low back pain radiating down both legs. (Tr. 278). Later that month, Naylor reported continued difficulty walking due to 8 out of 10 pain she characterized as constant. (Tr. 281). Physical examination again noted an antalgic gait, lumbar tenderness, and spasm. (Tr. 282). On October 7, 2014, Naylor reported she was unable to get Celebrex (a nonsteroidal anti-inflammatory prescription medication used to reduce inflammation and pain) due to cost, but that the samples had improved her pain. (Tr. 285). In January 2015, Naylor reported lower body pain that improved with medication and rest. (Tr. 289). In April 2016, Naylor reported persistent joint pain. (Tr. 327). During this time period, Naylor was prescribed various medications for pain. (Tr. 264-313, 327-29).

Records indicate Naylor presented to the Emergency Room with right knee pain and

swelling on April 24, 2015. (Tr. 256-58). With a referral, Naylor sought treatment from orthopedic specialist, Dr. Fambrough, for her knee pain. Naylor saw Dr. Fambrough in May 2015, and records from that visit indicate Naylor had been experiencing knee pain for over a month and could hardly walk. (Tr. 318). She reported that the knee pain persisted despite Hydrocodone and Tramadol prescribed in the emergency room. Dr. Fambrough removed excess fluid from around Naylor's knee and administrated a steroid injection. (Tr. 313). Naylor saw Dr. Fambrough again in June 2015, and reported continued pain in her right knee. (Tr. 317). Dr. Fambrough noted damage to the cartilage under Naylor's knee cap ("chondromalacia of the patella") and her continued pain over the medial meniscus and the posterior corner. (*Id.*). Dr. Fambrough recommended arthroscopic surgery. (*Id.*). The record indicates Naylor could not afford the surgery. (Tr. 323).

The ALJ's finding that Naylor's severe impairments of lumbar degenerative disc disease and degenerative joint disease of the right knee are "generally controlled with conservative measures, primarily with the use of prescription medications" is not inconsistent with the longitudinal treatment history. Dr. Coffey's treatment notes from August 2013 through April 2016, show that prescription pain medication provided relief for Naylor's lower back pain.[4] (Tr.

---

[4] These records indicate that as early as August 15, 2013, Dr. Coffey prescribed Naylor Tramadol 50 mg, one tablet four times a time, for her lower back pain. (Tr. 264-266). During a February 25, 2014 appointment, Naylor reported continued back pain. (Tr. 270). Dr. Coffey discussed pain control options with her and then adjusted her Tramadol prescription, to one or two 50 mg tablets three times a day, as needed. (Tr. 270-272). During her follow-up appointment on June 10, 2014, Naylor reported improvement with medication. (Tr. 274). In August 2014, Naylor twice reported continued lower back pain and difficulty walking. (Tr. 278-283). On August 5, 2014, Dr. Coffey prescribed a steroid pack, but continued all other medications unchanged. (Tr. 280). During Naylor's August 20, 2014 appointment, Dr. Coffey added Celebrex (which was later changed to Mobic for insurances purposes (tr. 285), an anti-inflammatory medication, but continued Tramadol as prescribed. (Tr. 283). At her October 7, 2014 appointment, Naylor reported joint pain improvement and made no complaints regarding

23, 264-94, 327-29). As to Naylor's right knee pain, records from Dr. Marlin Gill's consultative examination in September 2015 and state agency medical agent Dr. Robert Heilpern's review of the records in October 2015 (as discussed more fully below) support the ALJ's finding that Naylor's right knee condition had improved. (Tr. 23, 63-67, 323-325).

   **2. Dr. Gill and Dr. Heilpern's Examinations**

The Commissioner relies on a September 29, 2015 consultative examination from Dr. Marlin Gill and an October 7, 2015 report from state agency medical consultant Dr. Robert Heilpern to support the finding that Naylor was capable of performing a reduced range of light work. Dr. Gill examined Naylor and noted pain and a reduced range of motion in her low back and bilateral knees. (Tr. 324). Dr. Gill noted a slow gait, a positive straight leg raising test result (radiating leg pain), and an inability to walk on her tip toes and heels. (*Id.*). Dr. Gill also noted Naylor did not require the use of an assistive device to walk, could get on an off the examination table without assistance, leg strength was 4/5 bilaterally, she did not have swelling, tenderness, or deformity in her right knee, and she could squat down one-half way and rise. (*Id.*) The ALJ noted these as well as Dr. Gill's listed diagnoses of low back pain with x-ray evidence of mild multilevel degenerative disc disease and some facet arthrosis and right knee pain with a torn meniscus and history of a Baker's cyst (from too much fluid on her knee). (Tr. 23, 325). The ALJ also noted that x-rays of Naylor's lumbar spine showed mild multilevel degenerative disc disease and some

---

lower back pain. (Tr. 285-287). Dr. Coffey continued Naylor's Tramadol prescription. (Tr. 287). Although Naylor reported generalized, lower body pain on January 13, 2015, she reported that it improved with medication and that she needed a Tramadol refill. (Tr. 289). Naylor's April 27, 2015 appointment focused on the need for an MRI for her knee, with no reports of lower back pain. (Tr. 293-294). Naylor saw Dr. Coffey on April 27, 2016, for a check-up with refills. (Tr. 327). Naylor complained of joint pain, but not lower back pain. (*Id.*). Dr. Coffey recommended a follow-up in four months. (Tr. 329). At no time did Dr. Coffey recommend further treatment for Naylor's lower back pain.

bilateral facet arthrosis at L5-S1. (Tr. 23, 324). The ALJ then reiterated that she believed Dr. Coffey's, Naylor's primary physician, treatment notes indicate that Naylor's back pain continues to be treated with the use of prescription medications. (Tr. 23). The ALJ recognized that Dr. Gill's examination showed some limitations, but found that those findings did not support Naylor's claim of disabling limitations from her back or knee conditions." (*Id.*).

The ALJ also noted that on October 7, 2015, state agency medical consultant Dr. Robert Heilpern viewed the evidence and opined that Naylor could perform work at the light exertional level with some postural and environmental limitations. (Tr. 23). The ALJ stated she accorded this assessment "great weight" because "it is consistent with [Naylor's] treatment history. Moreover, there are no medical opinions to support greater physical limitations." (Tr. 23). Dr. Gill's September 2015 consultative examination and Dr. Heilpern's opinion based on his October 2015 review of the records, along with the longitudinal treatment history articulated above, provide substantial evidence to support the ALJ's RFC finding. Furthermore, as the ALJ points out (tr. 23), there are no medical opinions or findings to support greater physical limitations.

### 3. Inability to Afford Treatment

To the extent Naylor contends the ALJ improperly considered her inability to afford treatment (doc. 13 at 11-14), there is no evidence to support such an error. In the decision, the ALJ notes that Naylor asserted she did not receive necessary medical treatment due to lack of medical insurance and that there was nothing in the record to show frequent emergency room visits or attempts to secure medical care from other state agency, charitable or sliding scale sources. (Tr. 23). These are all true statements and the record shows the ALJ did not primarily rely on Naylor's lack of treatment in reaching her decision. (Tr. 22-23). An ALJ does not commit reversible error by failing to consider the financial reasons for a claimant's noncompliance when her finding that

11

a claimant is not disabled is "not significantly based on a finding of noncompliance." *Ellison*, 355 F.3d at 1275. *See also Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 921 (11th Cir. 2015) (same). As discussed more fully above, the ALJ evaluated the record evidence and concluded Naylor was not disabled. (*Id.*).

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Naylor's claim for a period of disability, DIB, and SSI is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE**.

DONE this 16th day of March, 2020.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE